IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

July 29, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, ex rel. | ) | SCOTT COUNTY |
| | ) | |
| ANGELA B. BYRD | ) | 03A01-9901-CV-00022 |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | HON. CONRAD TROUTMAN, JR., |
| v. | ) | JUDGE |
| | ) | |
| | ) | |
| BILLY J. GIBSON | ) | |
| | ) | |
| Defendant-Appellee | ) | VACATED AND REMANDED |

PAUL G. SUMMERS, Attorney General and Reporter, and TAMMY L. KENNEDY, Assistant Attorney General, OF NASHVILLE, FOR APPELLANT

JOHNNY V. DUNAWAY OF LaFOLLETTE FOR APPELLEE


O P I N I O N


Goddard, P.J.


        This is a suit by the State of Tennessee on behalf of Angela B. Byrd against Billy J. Gibson to establish that he is the father of Ms. Byrd's son, Aaron J. Byrd, born on June 15, 1996.


        The Trial Court was of the opinion that an earlier divorce suit filed by Ms. Byrd against her then husband, Darrin

Lee Byrd, which alleged that Ms. Byrd at the time was pregnant and seeking support for the unborn child had the effect of alleging Mr. Byrd was the father and thus judicially estopped her from prosecuting a paternity suit against Mr. Gibson.

A single issue is raised on this appeal:

> Whether the court erred in granting Mr. Gibson's Motion For Summary [Judgment] on the basis that the mother, Angela Byrd, was judicially estopped to allege that the defendant, Billy Gibson, is the father of Aaron Jacob.

In answer to interrogatories, Ms. Byrd stated the following:

> That in response to Interrogatory No. 7. On June 13, 1995, Billy Gibson and I met. We had sexual relations shortly thereafter until the end of August 1995. In early September, Darrin Byrd and I had sexual intercourse. On September 14, 1995, Billy and I reconciled and resumed sexual relations until our final separation in January 1996. After September 14, 1995, I was never intimate with anyone else. I believe I became pregnant the last week of September. Aaron Jacob Byrd looks like Billy Gibson.

As previously noted, she did allege in her divorce complaint that she was pregnant with a child due in June 1996, and sought support for the unborn child, although on the birth certificate the name of the father is left blank.

During the course of the divorce proceedings the question arose as to the paternity of Aaron, and the Trial

2

Court ordered that "visitation of the minor child Jacob [Aaron Jacob] be reserved at this time due to the ongoing litigation concerning paternity of said child." The Court also declined to award custody or child support.

By an amended petition Mr. Byrd was made a party to the paternity suit, and by agreement DNA blood testing was performed which disclosed that Mr. Byrd was excluded as the father of Aaron.

We believe the case of State ex rel. Scott v. Brown, 937 S.W. 2d 934 (Tenn.App.1996), which relies upon an earlier case, is dispositive of the issue raised.

In that case, which was also a paternity case, when a question of judicial estoppel was raised under circumstances similar to the ones in the case at bar, we stated the following (at page 936):

> We now turn to the issues on appeal. The first, we believe, is resolved by an unreported opinion of this Court, *Kyle v. Richardson*, filed in Knoxville on May 20, 1983. In a factual situation similar to the case at bar, we rejected the doctrine of judicial estoppel, and in doing so stated the following:
>
> > As heretofore stated, the defendant relies on judicial estoppel. Tennessee has long recognized the doctrine of estoppel. It is said that as a matter of public policy a party will not be permitted to take inconsistent positions in legal proceedings. However, it is also recognized that each case must be decided on its on [sic] particular facts and circumstances. The doctrine is designed not so much to prevent prejudice resulting to the other party but

3

to prevent prejudice resulting to the administration of justice if a party were allowed to swear one way one time and a different way another time. *Cothron v. Scott*, 60 Tenn.App. 298, 446 S.W.2d 533 (1960); *Bubis v. Blackman*, 58 Tenn.App. 619, 435 S.W.2d 492 (1968); *Monroe County Motor Co. v. Tennessee Odins [Odin] Ins. Co.*, 33 Tenn.App. 223, 231 S.W.2d 386 (1950).

A necessary component of this rule is that anything short of a willfully false statement of fact, in the sense of conscious and deliberate perjury, is insufficient to give rise to an estoppel and that the party is entitled to explain that the statement was inadvertent or inconsiderate or represents a mistake of law. (Citations omitted.)

Mr. Gibson attempts to distinguish Scott, arguing in his brief the following:

Appellant has also cited State ex rel. Scott v. Brown, 937 S.W.2d 934 (Tenn. App. 1996) which appears at first glance to be good authority for not applying judicial estoppel in the case at bar. However, the Scott case is distinguished from the present case in that the plaintiff actually was mistaken as to the paternity of the child. On August 26, 1978, a final decree was entered granting divorce and custody of the parties' children to Plaintiff Mrs. Stephens and ordering Defendant Mr. Stephens to pay child support. Eight years later in August, 1986, a joint petition was filed by Mr. and Mrs. Stephens, seeking to have the court declare the child was not the natural child of Mr. Stephens. The Plaintiff came before the court upon finding that she had made a mistake and retracted her prior statement by entering into an Agreed Amended Order that Mr. Stephens was not the father of the child. Then, in August, 1990, she filed a petition for paternity. Thus, Ms. Stephens was before the court with clean hands, and upon having made a good faith mistake, and thus inadvertent statement, about the paternity of her child. This is simply not the case on the present facts.

In the first place, there is nothing in the record to show that Ms. Byrd was not mistaken at the time she filed her

divorce complaint.  Additionally--as distinguished from <u>Scott</u>, when the mistake was corrected some eight years later, during which period the father was required to pay child support--corrective action in the case at bar was taken prior to trial. It is not clear whether Ms. Byrd or Mr. Byrd submitted the DNA testing result, but in any event, it was before the Court long before it was in <u>Scott</u>.

For the foregoing reasons the judgment of the Trial Court is vacated and the cause remanded for further proceedings consistent with this opinion.  Costs of appeal are adjudged against Mr. Gibson.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.

5